PHILLIPS NIZER LLP
Mark M. Elliott
Jared R. Clark
485 Lexington Avenue – 14th Floor
New York, NY  10017
Tel: (212) 977-9700
melliott@phillipsnizer.com
jclark@phillipsnizer.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TC SYSTEMS, INC., a Delaware corporation; and TELEPORT COMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,**<br><br>Plaintiffs,<br><br>vs.<br><br>**LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company; CENTURYLINK COMMUNICATIONS, LLC, a Delaware limited liability company; and BROADWING COMMUNICATIONS, LLC, a Delaware limited liability company**<br><br>Defendants. | Civ. No. |

## COMPLAINT

Plaintiffs TC Systems, Inc. and Teleport Communications America, LLC (collectively referred to as "TCG") file this Complaint against Defendants, Level 3 Communications, LLC, CenturyLink Communications, LLC, and Broadwing Communications, LLC (collectively referred to as "Defendants"), for violation of TCG's Tariff No. 2, as well as various state tariffs and service guides identified below, and seek declaratory, injunctive, and monetary relief from Defendants.

1. This case involves Defendants' refusal to pay TCG amounts due for originating switched access services according to the applicable tariffed and service guide rates, as required by federal and state law.

2. TCG requests that the Court: (a) declare that Defendants are in violation of TCG's FCC Tariff No. 2, as well as eighteen (18) state tariffs and/or service guides that are identified below; (b) enjoin Defendants from further violations; and (c) order Defendants to compensate TCG for its damages, including the recovery of unpaid access charges and applicable late payment charges.

## PARTIES

3. Plaintiff TC Systems, Inc. ("TC Systems") is a Delaware corporation with its principal place of business in Bedminster, New Jersey. TC Systems is a Competitive Local Exchange Carrier ("CLEC") and provides services in Massachusetts and New York ("TC Systems' Territory").

4. Plaintiff Teleport Communications America, LLC ("Teleport") is a Delaware limited liability company with its principal place of business in Bedminster, New Jersey. Teleport is a CLEC and provides access services in a number of states, including Arizona, Colorado, the District of Columbia, Maryland, Minnesota, Nebraska, New Hampshire, New Jersey, Nevada, Ohio, Oregon, Pennsylvania, Rhode Island, Utah, Virginia, and Washington ("Teleport's Territory").

5. Teleport's and TC Systems' Territories will collectively be referred to as "TCG's Territory."

6. Defendant Level 3 Communications, LLC ("Level 3") is a Delaware limited liability company with its principal place of business is Broomfield, Colorado. Level 3 is a

common carrier as defined by 47 U.S.C. § 153 (11).  Level 3 is licensed by the Federal Communications Commission ("FCC") and provides telecommunications services in TCG's Territory.  Level 3 does business in this district and may be served with process through its registered agent, CT Corporation System, 28 Liberty Street, New York, New York 10005.

7.     Defendant Broadwing Communications, LLC ("Broadwing") is a Delaware limited liability company with its principal place of business is Broomfield, Colorado. Broadwing is a common carrier as defined by 47 U.S.C. § 153 (11).  Broadwing is licensed by the Federal Communications Commission ("FCC") and provides telecommunications services in TCG's Territory. Broadwing does business in this district and may be served with process through its registered agent, CT Corporation System, 28 Liberty Street, New York, New York 10005.

8.     Defendant CenturyLink Communications, LLC ("CenturyLink") is a Delaware limited liability company with its principal place of business in Monroe, Louisiana.  CenturyLink is a common carrier as defined by 47 U.S.C. § 153 (11).  CenturyLink is licensed by the Federal Communications Commission ("FCC") and provides telecommunications services in TCG's Territory. CenturyLink does business in this district and may be served with process through its registered agent, CT Corporation System, 28 Liberty Street, New York, New York 10005.

## JURISDICTION AND VENUE

9.     This is a civil action, arising under the laws of the United States, including Section 203 of the Communications Act, 47 U.S.C. §§ 151 *et seq.*  TCG seeks to enforce a federal tariff filed with the FCC pursuant to 47 U.S.C. § 203, as well as various state tariffs and service guides.

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 2201, and 47 U.S.C. § 207.

11. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as all Defendants reside in this district within the meaning of 28 U.S.C. § 1391 (c) and (d), and/or because Defendants transact business in this district, and/or because a substantial part of the events or omissions giving rise to TCG's claims occurred in this judicial district.

## BACKGROUND

### A. Overview of Access Charges

12. TCG operates local exchange networks in designated service areas, originating, transporting, and terminating local telecommunications traffic (such as telephone calls between two people in the same local area). In addition to carrying local calls, TCG helps long-distance carriers originate and complete their long-distance calls, as explained further below. In exchange for giving long-distance carriers "access" to their local networks to provide long-distance services, TCG is entitled to "switched access charges" by law and under its effective federal and state tariffs and service guides. Switched access services are a communications path between the end user and the access customer, through TCG's facilities. TCG's tariffs specify the various rate elements applicable to switched access service, priced on an *a la carte* basis.

13. When a customer makes a traditional long-distance (or "interexchange") call, he or she typically dials the number 1, followed by the "area code" for the number to be called, and then the seven-digit telephone number. For example, TCG's customer in Denver's 303 area code would dial "1-212-NXX-XXXX" where 212 is the area code for New York, and "NXX-XXXX" is the desired telephone number of the party the TCG customer wishes to reach. TCG then transports the call over its network to the point of presence ("POP") of the calling customer's

long-distance carrier for that area. From there, the long-distance carrier transports the interexchange call to its POP in the area of the called party. Then, it delivers the call to the local exchange carrier that serves the called party, and that carrier finishes delivering the call to the called-party. The long-distance carrier bills the calling party for the call.

14. For such interexchange calls, long-distance providers are obligated to pay the originating local exchange carriers like TCG interstate or intrastate switched access charges at the end of the call, depending on the location of the calling and called parties. The local exchange carrier that serves the customer that placed or "originated" the call – in the above example, the carrier for the Denver customer who obtains local phone service from TCG – is entitled to "originating" switched access charges. Based on the Denver area code and the phone number that originated the call, and the New York area code and the phone number that the customer dialed, the local exchange carrier can tell it is a long-distance call and can bill the long-distance carrier for "originating switched access charges" to obtain compensation for the use of its network. The local exchange carrier that serves the customer at the receiving end of the call in New York is entitled to "terminating" access charges. This Complaint, however, is concerned only with the originating switched access changes that Defendants failed and refused to pay.

15. Interstate access charges apply to calls that originate in one state and terminate in a different state, for instance the above-described call from a customer in Denver, Colorado, to a person in New York, New York. The rates, terms, and conditions of TCG's interstate access charges are set forth in TCG's Tariff No. 2 filed with the FCC.

16. Similarly, intrastate access charges apply to calls that originate in one part of a state and terminate in the same state. The rates, terms, and conditions of TCG's intrastate

switched access charges are set forth in the following tariffs and/or services guides which are applicable in the state where service is provided:

    a.    In Arizona, Teleport Communications America, LLC – Access Services – A.C.C. No. 2 Tariff;

    b.    In Colorado, Teleport Communications America, LLC – Access Services – Colo. PUC Tariff No. 8;

    c.    In the District of Columbia, Teleport Communications America, LLC – Access Services – P.S.C. – D.C. – No. 4;

    d.    In Massachusetts, TC Systems, Inc. – Access Services – D.T.C. – Mass. – No. 1;

    e.    In Maryland, Teleport Communications America, LLC – Access Services – P.S.C. M. No. 1;

    f.    In Minnesota, Teleport Communications America, LLC MN P.U.C. No. 1 – Access and Interconnection Services Tariff;

    g.    In Nebraska, Teleport Communications America, LLC Nebraska P.S.C. No. 3 – Access Services Tariff;

    h.    In New Hampshire—Teleport Communications America, LLC NH P.U.C. No. 2 – Access Services;

    i.    In New Jersey, Teleport Communications America, LLC NJ B.P.U. No. 6 – Access and Interconnection Services;

    j.    In Nevada, Teleport Communications America, LLC Nevada Service Guide – Access and Network Interconnection Services;

      k.      In New York, TC Systems, Inc. – P.S.C. No. 7 – Telephone – Access Services;

      l.      In Ohio, Teleport Communications America, LLC Tariff P.U.C.O. No. 1 – Access and Interconnection Services;

      m.      In Oregon, Teleport Communications America, LLC Oregon Service Guide – Access and Interconnection Services;

      n.      In Pennsylvania, Teleport Communications America, LLC – Telephone PA. P.U.C. Tariff No. 1 – Switched Access and Interconnection Services;

      o.      In Rhode Island, Teleport Communications America, LLC P.U.C. R.I. No. 5 – Access and Interconnection Services Tariff;

      p.      In Utah, Teleport Communications America, LLC UT P.S.C. No. 1 – Access and Interconnection Services;

      q.      In Virginia, Teleport Communications America, LLC VSCC No. 2 – Access Services; and

      r.      In Washington, Teleport Communications America, LLC Washington Service Guide – Access Services ("these eighteen (18) tariffs and/or service guides will collectively be referred to as "State Tariffs and Service Guides").

**B.**    **Overview of 8YY Service and 8YY Transit Traffic Service**

17.    In addition to helping long-distance carriers originate and terminate their long-distance calls, TCG also helps wireless carriers route their calls to long-distance carriers.

18.    This case involves one type of long-distance calls, namely 8YY Service.

19.    8YY Service is an outbound toll-free service that allows a calling party to make a long-distance call to a toll-free number (e.g. numbers whose area codes start with 800, 888, 877,

etc.) with charges billed to the called party number, and therefore without an associated charge to the calling party.

20. This case involves toll-free calls that originate with AT&T Mobility, LLC ("AT&T Mobility"), TCG's affiliate.

21. Specifically, AT&T Mobility interconnects with TCG and transports its customers' calls to TCG. TCG, in turn, performs an 8YY database query, or "dip," to determine the carrier to which it should route the call. TCG also serves as the transmission path between AT&T Mobility and the long-distance carrier's network so that the long-distance provider, commonly known as an Interexchange Carrier ("IXC") can transport the call to its 8YY customer. In the context of this litigation, the IXC is always Level 3, Broadwing, or CenturyLink.

22. 8YY Transit Traffic Service is the name for the service of transporting the call to Defendants as the IXC. The service description and associated charges for 8YY Transit Traffic Service are set forth in TCG's FCC Tariff No. 2, and its State Tariffs and Service Guides. 8YY Transit Traffic Service is an access service in which TCG transports toll-free traffic originated by a third-party telecommunications carrier, here AT&T Mobility, who is not an end user or other user of TCG's local exchange service, through its wire center to a IXC (Level 3, Broadwing, or CenturyLink).

23. This lawsuit involves one type of 8YY Transit Traffic Service called "Indirect Routed" Transit Traffic Service, meaning that after the traffic is routed from AT&T Mobility to TCG's end office, the traffic is routed by TCG to the incumbent local exchange carrier or alternative access tandem provider which, in turn, routes the call to the long-distance carrier

(Level 3, Broadwing, or CenturyLink), so that the long-distance carrier can deliver the call to its 8YY customer. Below is a diagram which depicts this service:



24. For example, imagine an AT&T Mobility customer in Denver's 303 area code makes an 800 call to one of Defendants' 8YY customers in New York, New York's 212 area code. AT&T Mobility would transport that call to the end office of its affiliate, TCG, where TCG would perform a query of the 8YY Database so that TCG's switch would know where to route the call. Once TCG performed the 8YY Database query, TCG would transport the call to the Access Tandem of either the incumbent local exchange carrier in Denver, or the alternative access tandem provider, who, in turn, routes the call to the IXC (Level 3, Broadwing, or CenturyLink) to deliver the call to the IXC's customer.

25. Defendants are obligated to pay TCG for originating switched access charges for performing the 8YY database query and for routing the 8YY call to the incumbent local exchange carrier or the alternative access provider's access tandem, which routes the call to Defendants.

## C. Defendants' Purchase of Originating Switched Access Service and Refusal to Pay for the Same

26. Defendants purchased, and continue to purchase, originating switched access services from TCG pursuant to TCG's FCC Tariff No. 2 and State Tariffs and Service Guides, which contain the rates, terms, and conditions for these services.

27. When customers, such as Defendants, purchase originating switched access services offered in TCG's FCC Tariff No. 2 and State Tariffs and Service Guides, they are required by federal and state law to pay the tariffed rates and abide by the terms and conditions set forth therein.

28. Although TCG issued invoices to Defendants for the originating switched access services that they purchased, Defendants began disputing such charges in approximately August 2017 and failed and refused to pay the invoices for originating switched access services, which became due in October 2017.

## COUNT I – DEFENDANTS' VIOLATION OF TCG'S FCC TARIFF NO. 2

29. TCG incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

30. TCG's rates, terms, and conditions for originating switched access services are set forth in TCG's FCC Tariff No. 2.

31. Defendants purchased originating switched access services from TCG's FCC Tariff No. 2.

32. TCG provided originating switched access services and otherwise fully performed its relevant obligations under TCG's FCC Tariff No. 2, except those that it was prevented from performing, those it was excused from performing, or those that were waived by Defendants' misconduct as alleged herein.

33. TCG duly billed Defendants for the originating switched access services that TCG provided pursuant to TCG's FCC Tariff No. 2.

34. Defendants failed to pay TCG for the originating switched access services in accordance with TCG's FCC Tariff No. 2.

35. Defendants have violated, and are violating, TCG's FCC Tariff No. 2.

36. TCG has been damaged in an amount to be determined by this Court, including but not limited to damages for non-payment of originating switched access service provided to Defendants in the base amount of $3,185,454.16, as well as late payment charges.

## COUNT II – DECLARATORY JUDGMENT/INJUNCTIVE RELIEF REGARDING TCG'S FCC TARIFF NO. 2

37. TCG incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

38. Defendants are required to pay for originating switched access services that TCG provided and continues to provide Defendants pursuant to TCG's FCC Tariff No. 2.

39. TCG is entitled to a declaratory judgment that TCG's FCC Tariff No. 2 requires Defendants to pay charges to TCG on a monthly basis for the originating switched access services that TCG provided and continues to provide to Defendants, including late payment charges, and that TCG properly applied those charges.

40. Absent injunctive relief, TCG will be irreparably harmed.

41. If Defendants are allowed to continue avoiding the payment of originating switched access charges, TCG will be forced to initiate multiple legal proceedings against Defendants to determine the amount of originating switched access charges that Defendants should have paid TCG on a forward-going basis.

## COUNT III – DEFENDANTS' VIOLATION OF TCG'S STATE TARIFFS AND SERVICE GUIDES

42. TCG incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

43. TCG's rates, terms, and conditions for originating switched access services are set forth in its FCC Interstate Access Tariffs, State Tariffs and Service Guides.

44. Defendants purchased originating switched access services from TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs.

45. TCG provided originating switched access services and otherwise fully performed its relevant obligations under TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs, except those that it was prevented from performing, those it was excused from performing, or those that were waived by Defendants' misconduct as alleged herein.

46. TCG duly billed Defendants for the originating switched access services that TCG provided pursuant to TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs.

47. Defendants failed to pay TCG for the originating switched access services in accordance with TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs.

48. Defendants have violated, and are violating, TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs.

49. TCG has been damaged in an amount to be determined by this Court, including but not limited to damages for originating switched access service provided to Defendants which have not been paid, as well as late payment charges.

## COUNT IV – DECLARATORY JUDGMENT/INJUNCTIVE RELIEF REGARDING TCG'S STATE TARIFFS AND SERVICE GUIDES

50. TCG incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

51. Defendants are required to pay for originating switched access services that TCG provided and continues to provide Defendants pursuant to TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs.

52. TCG is entitled to a declaratory judgment that TCG's State Tariffs, Service Guides and FCC Interstate Access Tariffs, require Defendants to pay charges to TCG on a monthly basis for the originating switched access services that TCG provided and continues to provide to Defendants, including late payment charges, and that TCG properly applied those charges.

53. Absent injunctive relief, TCG will be irreparably harmed.

54. If Defendants are allowed to continue avoiding the full payment of originating switched access charges, TCG will be forced to initiate multiple legal proceedings against Defendants to determine the amount of originating switched access charges that Defendants should have paid TCG on a forward-going basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Teleport Communications America, LLC and TC Systems, Inc. request the following relief:

    (a) Declaratory relief finding that Defendants are in violation of their FCC Tariff No. 2;

    (b) Declaratory relief finding that Defendants are in violation of their State Tariffs and Service Guides;

(c) Preliminary and injunctive relief enjoining Defendants from continuing to engage in the misconduct complained of;

(d) Monetary damages in the amount of the originating switched access charges (including late payment charges) that Teleport Communications America, LLC and TC Systems, Inc. are entitled to pursuant to their FCC Tariff No. 2, as well as their State Tariffs and Service Guides, and that Defendants have failed and refused to pay; and

(e) Such other and further relief, in law and in equity, that the Court finds that Teleport Communications America, LLC and TC Systems, Inc. are justly entitled.

Dated: New York, New York
October 9, 2019

PHILLIPS NIZER LLP

_____
Mark M. Elliott
Jared R. Clark
485 Lexington Avenue – 14th Floor
New York, NY  10017
Tel: (212) 977-9700
melliott@phillipsnizer.com
jclark@phillipsnizer.com

*ATTORNEYS FOR PLAINTIFFS*